UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Conservation Law Foundation

     v.                                    Civil No. 11-cv-353-JL
                                        Opinion No. 2013 DNH 167

Public Service Company of New
Hampshire

**MEMORANDUM ORDER**

When one statute or regulation incorporates another by
reference, what version of the referenced provision does it
incorporate:  the version in effect at the time of enactment, or
the version in effect at the time of invocation--amendments and
all?  That question is central to this case, a citizen suit
brought by the Conservation Law Foundation ("CLF") under the
Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq.  CLF alleges that
the defendant, Public Service Company of New Hampshire ("PSNH"),
has violated the CAA by operating Merrimack Station, a coal-fired
power plant in Bow, New Hampshire, without the necessary permits.
More specifically, CLF alleges that PSNH, both prior to and since
making changes to the plant in 2008 and 2009 (which the parties
refer to collectively as the "turbine projects"), failed to
obtain permits required under the state and federal regulations
that implement the CAA's "New Source Review" program.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 7604(a) (CAA). PSNH has moved to dismiss Counts 1-4 of CLF's complaint for failure to state a claim upon which relief can be granted.[1]  See Fed. R. Civ. P. 12(b)(6).  Its primary argument is that the EPA's implementing regulations for the New Source Review program, as amended in 2002, did not require it to obtain permits in connection with the turbine projects.  CLF, it hardly need be said, disagrees with PSNH, both as to the applicability of the post-2002 regulations (which, CLF argues, did not apply in New Hampshire at the time of the turbine projects) and their interpretation.  The parties' briefing on these topics has been supplemented by amicus briefs submitted by the United States (which supports CLF's position) and the Utility Air Regulatory Group (which describes itself as an "unincorporated trade association of individual electric utilities and national industry trade associations" and whose briefs support PSNH's position).

---

[1]PSNH also filed a separate motion to dismiss the entire action for lack of standing.  See Fed. R. Civ. P. 12(b)(1).  In a previous order, this court granted that motion as to Counts 5-7, but denied it as to Counts 1-4.  See Conservation Law Found. v. Pub. Serv. Co. of N.H., 2012 DNH 174.  Counts 1-4 are therefore the only claims remaining in this case.

Because the interpretation of the post-2002 regulations was also at issue in a case pending before the Court of Appeals for the Sixth Circuit, this court refrained from ruling on PSNH's motion until that court rendered its decision.  See Order of Sept. 4, 2012.  The Sixth Circuit issued its opinion on March 28, 2013, see United States v. DTE Energy Co., 711 F.3d 643 (6th Cir. 2013), and later that same day this court invited the parties "to submit additional briefing regarding the import of the Sixth Circuit's decision to the defendant's motion," which they did. CLF also filed a motion urging this court to defer consideration of the motion to dismiss until it had resolved CLF's anticipated motion to amend the complaint.  See Fed. R. Civ. P. 15.

Over PSNH's objection, the court granted CLF's request.  As expected, CLF then moved to amend the complaint to add new allegations to Counts 1 and 3 and to include a claim that PSNH's "turbine projects also violated a provision of the Act that is separate and distinct from the provisions at issue in the original Complaint"--the "New Source Performance Standards" established by 42 U.S.C. § 7411.  PSNH has filed an opposition to that motion, arguing that CLF unduly delayed filing its proposed amendments, and that they should be denied as futile in any event because of CLF's deficient notice of intent to sue.  See id. § 7604(b)(1)(A) (requiring pre-suit notice of citizen suit).

3

After hearing oral argument from the parties and amici, the court denies PSNH's motion to dismiss and grants CLF's motion to amend.  As already mentioned, the foundation upon which PSNH's primary argument for dismissal rests is the notion that the turbine projects were subject to the New Source Review permitting framework established by the 2002 amendments to the CAA's federal implementing regulations, and that the regulations as amended did not impose any obligation on PSNH to obtain permits in connection with the projects.  That foundation cannot bear weight:  New Hampshire's Department of Environmental Services, which is tasked with implementing the CAA in this state, had not adopted those amendments into state law at the time of the turbine projects. In its reply memorandum, PSNH attempts to salvage its motion by arguing that the complaint also fails to state a claim under the version of the regulations that actually applied in New Hampshire at the time of the projects (an argument it also advanced with vigor at oral argument).  That belated argument, however, is insufficiently developed, and the court will not address it at this time.  PSNH's motion accordingly fails.

PSNH's opposition to CLF's motion to amend suffers the same fate.  This case is still in its early stages--PSNH, as a result of its Rule 12 motion practice, has not even had to file an answer--so PSNH's accusation of unreasonable delay on CLF's part

4

rings hollow.  And, contrary to PSNH's argument, CLF's notice of intent to sue provided PSNH all the information about the alleged violation required under federal law.

## I.  <u>Applicable legal standard</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  With the facts so construed, "questions of law [are] ripe for resolution at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).  The following background summary adopts that approach.

## II.  **Background**

The facts underlying this case, at least as far as they are relevant to PSNH's motion to dismiss, are uncomplicated.[2]  PSNH operates plants that generate electricity in several locations in New Hampshire, including Merrimack Station in Bow.  Merrimack Station, which consists of two units dubbed "MK1" (in operation since 1960) and "MK2" (in operation since 1968), generates power by burning coal.  In addition to generating power, this process emits pollutants, including nitrogen oxide ($NO_x$), sulfur dioxide ($SO_2$), and carbon dioxide ($CO_2$), into the air.  Merrimack Station is the single largest point source of $CO_2$ in New Hampshire.

In recent years, PSNH has made several renovations to the plant.  In 2008, it replaced a steam turbine in MK2.  At the same time, it also replaced, installed, or modified related equipment in MK2 in order to increase turbine efficiency, increase output, and reduce maintenance outages.  CLF alleges that, while these alterations enabled additional generation capacity--and while PSNH's own projections indicated that they would cause annual $NO_x$ emissions to increase by 334 tons per year--PSNH did not obtain any permits prior to making them.  And, in late 2009, PSNH shut

---

[2]These facts are drawn from the allegations pled in CLF's original complaint, and the attachments thereto.  To the extent that CLF's proposed amended complaint contains additional allegations, those allegations are discussed in Part III.B infra.

down MK2 for a period of about four months to make additional alterations to the turbine and its associated equipment.  CLF alleges once again that, while these later changes enabled additional generation capacity and, by PSNH's projections, would again result in increased $NO_x$ emissions, PSNH did not obtain any permits prior to making them.  Nor, CLF alleges, has PSNH obtained the appropriate permits since that time.

In April 2011, CLF provided PSNH with a notice of its intent to file a citizen suit under the CAA, asserting that (among other things) PSNH's failure to obtain the permits in question violated the CAA and its implementing regulations.  See 42 U.S.C. § 7604(b); 40 C.F.R. § 54.3.  It also sent copies of the notice to the Environmental Protection Agency, the New Hampshire Department of Environmental Services, and the governor of New Hampshire, as required by the CAA.  See 42 U.S.C. § 7604(b).  None of those entities commenced an enforcement action to redress the alleged violations detailed in CLF's notice, and PSNH did not cease or remedy them.  Thus, on July 21, 2011, CLF filed this action.

## III.  <u>Analysis</u>

### A.   *PSNH's motion to dismiss*

Counts 1-4 of CLF's complaint, which are the subject of the motion now before the court, allege that PSNH violated the CAA and its implementing regulations by failing to obtain various

permits in connection with the turbine projects in 2008 and 2009.
In moving to dismiss these counts, PSNH argues that it was not in
fact required to obtain permits for those projects.  CLF's
claims, PSNH asserts, rely upon a version of the implementing
regulations for the CAA's "New Source Review" program that
existed prior to 2002.  In that year, the EPA amended those
regulations, and PSNH says that the new, amended regulations
obviated the need for the permits in question.  As it turns out,
though, New Hampshire had not yet adopted the 2002 amendments to
the EPA regulations when PSNH undertook the turbine projects,
meaning the pre-2002 version was still in force in this state at
that time.  For that reason, and those that follow, PSNH's motion
to dismiss is denied.

Congress enacted the CAA in order to, among other things,
"protect and enhance the quality of the Nation's air resources"
and encourage "the development and execution of [state] air
pollution prevention and control programs."  42 U.S.C. § 7401(b);
see also Conservation Law Found. v. Busey, 79 F.3d 1250, 1256
(1st Cir. 1996).  As a part of the regulatory structure created
by Congress, the EPA has established National Ambient Air Quality
Standards ("NAAQS"), which reflect the maximum allowable
concentration levels for particular air pollutants.  42 U.S.C.
§ 7409(b); see 40 C.F.R. § 50.1 et seq.  States play the primary

8

role in the implementation of the NAAQS.  42 U.S.C. § 7407(a).
Each state, including New Hampshire, must formulate and
administer a "state implementation plan," or "SIP", which
outlines a strategy for implementing, maintaining, and enforcing
NAAQS.  See generally 42 U.S.C. § 7410.

Each state's SIP must include a plan for "New Source Review"
("NSR"), i.e., for regulating the construction of, and "major
modifications" to, air pollution sources within the state.  See
40 C.F.R. § 51.160.  Two distinct programs fall within NSR's
scope.  For areas that have achieved NAAQS, states must implement
the "Prevention of Significant Deterioration," or "PSD" program.
See generally 42 U.S.C. §§ 7470-7492.  For areas that have not
achieved NAAQS, states are required to have a "Non-Attainment
NSR," or "NNSR" program.[3]  See generally id. §§ 7501-7515.  SIPs
and their subsidiary programs, though required to generally
adhere to the CAA's requirements, may vary from the EPA's
implementing regulations and impose more stringent standards than
those regulations, see 42 U.S.C. § 7416; as a result, the EPA's
regulations are not uniformly applicable throughout the states.

---

[3]Merrimack County, in which Merrimack Station is located,
has been designated a non-attainment area for ozone, but has not
been similarly designated for other pollutants.  See 40 C.F.R.
§ 81.330.

9

New Hampshire, through its Department of Environmental Services ("DES"), has developed a SIP, including (as it must) an NSR plan with subsidiary PSD and NNSR programs that contain the various permitting requirements that CLF alleges PSNH violated. See generally Code of N.H. Rules, Env-A.  The EPA has approved New Hampshire's SIP, see 40 C.F.R. §§ 52.1520, 52.1525; see also Approval and Promulgation of Air Quality Implementation Plans; New Hampshire, 67 Fed. Reg. 65,710 (Oct. 28, 2002), which incorporates certain federal regulations by reference.

As is pertinent here, the SIP provided, at all times relevant to this action, that "the provisions of 40 C.F.R. 52.21(b) through (p), (r), (t), (v), and (w) shall apply for the purposes of implementing a PSD permit program that meets the requirements of Title I of the [CAA]."  N.H. Code R. Env-A § 623.03(a) (2001).[4]  PSNH's primary argument hinges on this provision.  It contends that the DES, by promulgating a

_____

[4]Section 623.03 has since been amended and renumbered as N.H. Code R. Env-A § 619.03.  Although both New Hampshire's PSD permitting program and its NNSR permitting program are at issue in this action, this section deals only with the PSD program (as the quoted portion in the text above indicates).  In its written memoranda, PSNH maintained that the post-2002 version of the regulations governing both programs applied in New Hampshire.  At oral argument, however, PSNH conceded that the pre-2002 version of the NNSR regulations applied in this state, though it stood by its position that the post-2002 version of the PSD regulations applied.  Given this concession, the court need only address the extent to which the regulations governing the PSD program in this state incorporate federal law.

regulation that referred to certain subsections of 40 C.F.R. § 52.21 without including an express date reference, incorporated not only the version of the federal rule in existence at the time of the regulation's adoption, but all future amendments to the federal rule as well.  Thus, PSNH says, when the EPA subsequently amended the federal rule in late 2002--altering the way emissions were calculated for purposes of NSR permitting requirements, and relaxing those requirements--those amendments were automatically adopted into New Hampshire's SIP.  Under the 2002 amendments, PSNH argues, it was not required to obtain permits for the turbine projects as CLF claims, but could simply provide DES with a projection of the emissions increases that would result from those projects, and then monitor and report its emissions to DES for ensuing five years, see DTE Energy, 711 F.3d at 643 (describing this framework)--which it did.  CLF, for its part, argues that the state's regulation incorporates only the version of the federal rule in existence at the time the regulation was adopted, and therefore excludes the 2002 amendments.

The extent to which § 623.03(a) incorporates federal law remains an unsettled issue of New Hampshire law.  In such circumstances, this court "must make an informed prophecy of what the state's highest court would do in the same situation." Bartlett v. Mut. Pharm. Co., Inc., 731 F. Supp. 2d 135, 154

(D.N.H. 2010), aff'd, 678 F.3d 30 (1st Cir. 2012), rev'd on other grounds, 133 S.Ct. 2466 (2013).  This court believes that the New Hampshire Supreme Court would adopt CLF's reading of the state regulation.

New Hampshire courts apply general principles of statutory construction in interpreting administrative rules.  See In re Town of Pittsfield, 160 N.H. 604, 606 (2010); In re Parker, 158 N.H. 499, 502 (2009).  As a general rule, when a statute incorporates all or part of another act by reference, whether the adopting statute is affected by amendments to the adopted act turns on whether the reference is general or specific.  See generally 2B N.J. Singer & J.D. Singer, Sutherland Statutory Construction, §§ 51:7-:8 (7th ed. 2012) ("Sutherland")[5]; see also 82 C.J.S. Statutes § 357, at 478 (1999); F. Scott Boyd, Looking Glass Law: Legislation by Reference in the States, 68 La. L. Rev. 1201, 1238-40 (2008).  "A general reference statute refers to the law on a subject generally," Sutherland, § 51:7, and "adopts the law on the subject at the time the law is invoked, which includes all amendments and modifications subsequent to the reference

---

[5]The New Hampshire Supreme Court frequently relies upon the Sutherland treatise when addressing novel issues of statutory and regulatory construction.  See, e.g., Cecere v. Loon Mtn. Rec. Corp., 155 N.H. 289, 293 (2007); McKenzie v. City of Berlin, 145 N.H. 467, 471 (2000); Town of Nottingham v. Harvey, 120 N.H. 889, 895-96 (1980).

statute's enactment," id. § 51:8 (footnotes omitted).  "A statute
of specific reference, as the name suggests, refers specifically
to a particular statute by its title or section number," id.
§ 51:7, and "incorporates provisions as they exist at the time of
adoption, without subsequent amendments," id. § 51:8.

Section 623.03(a)'s incorporation plainly falls into the
latter category, as it refers not only to a specific section
number of the Code of Federal Regulations, but to specific
subsections within that section.  The general interpretive rule,
then, would dictate that the EPA's 2002 amendments were not in
effect in New Hampshire during the relevant time frame, and that
PSNH remained subject to the preëxisting permitting regime.

The court acknowledges that, like most canons of
construction, the general/specific reference rule is not
absolute.  The Sutherland treatise declares that it does not
apply if the drafter "has expressly or by strong implication
shown its intention to incorporate subsequent amendments within
the statute."  Sutherland, § 51:8; see also 82 C.J.S. Statutes
§ 357, at 478 ("[W]here the legislative intent to do so clearly
appears"--presumably, as far as the court is concerned, in the
text of the statute itself--"the adopting statute will include
subsequent modifications of the original act.").  Neither
§ 623.03 itself nor any other part of the regulations, however,

contains a clear indication that the general rule does not apply.
And, while this court is not wont to search for a provision's so-
called "intent" in sources extrinsic to the text itself, PSNH
also has not identified any extratextual materials that support
such a conclusion.

In fact, in support of its reading of § 623.03, PSNH cites
only a single source (apart from the regulatory text itself--
which, as just noted, favors CLF).  It points out that the EPA's
statement approving of New Hampshire's PSD permitting
requirements includes the following passage:

> EPA notes that [§ 623.03] did not define a date of the
> incorporated rule revision of 40 CFR 52.21.  Without
> this date, New Hampshire believes its PSD rules will
> automatically incorporate and implement all future
> revisions to 40 CFR 52.21 without the need for
> additional state rulemaking.

Approval and Promulgation of Air Quality Implementation Plans;
New Hampshire, 67 Fed. Reg. 65,710, 65,711 (Oct. 28, 2002).

This brief discussion does not reliably communicate anything
about whether § 623.03 incorporates subsequent amendments to
§ 52.21.  At best, it is a secondhand account of a belief that
some unidentified person--presumably at the DES, although that is
not evident from the quoted passage--professed to have.  And, as
CLF points out, less than six months later the DES itself
disavowed that belief, stating in a letter to the EPA's regional
administrator:

14

> [A]lthough New Hampshire's PSD rules have incorporated
> by reference . . . the federal PSD rules, we do not
> agree that the [incorporation by reference] effects an
> automatic adoption of the NSR Reform rule program
> elements as of March 3, 2003.  We have consulted with
> the Attorney General's Office and have been advised
> that, as a matter of state law, the [DES] is required
> to initiate notice and comment rulemaking proceedings
> to effect amendments to the state's PSD rules.[6]  Even
> though the [DES] did not include an incorporation date
> in the PSD rules, as was done for the state's Non-
> attainment program rules, the lack of the incorporation
> date does not, in and of itself, allow the Department
> to implement and enforce revisions made to federal
> regulations.

Letter from Robert R. Scott, Chief Air Programs Manager, Air

Resources Division, N.H. DES, to Robert Varney, Regional

Administrator, USEPA Region I (Feb. 14, 2003).  Similarly, the

EPA later indicated that it did not put any stock in that belief,

commenting that "New Hampshire's PSD SIP consists, in the main,

of an incorporation by reference of 40 C.F.R. § 52.21 as it stood

---

[6]This is consistent with advice the New Hampshire Attorney
General had previously given to the DES.  In a 1988 advisory
letter, the Attorney General counseled the DES that it lacked the
authority "to incorporate EPA regulations in a manner which will
automatically adopt all future amendments by EPA without
participating in the rulemaking process of [N.H. Rev. Stat. Ann.]
Ch. 541-A," explaining that if the DES "should decide to simply
incorporate into its rules those of EPA, it should adopt and
specify the particular edition of the EPA regulation which is
being incorporated," and "[t]he substantive text of that citation
will remain in effect, regardless of changes by the federal
government . . . ."  Administrative Rules for Water Testing
Laboratory Certification, N.H. Att'y Gen. Op. No. O-88-036, 1988
WL 483308 (Oct. 4, 1988).  In light of this previous advice, it
is doubtful that DES believed, at the time it promulgated
§ 623.03, that it had the authority to incorporate future
revisions to § 52.21.

when the PSD SIP was approved"--i.e., before the amendments in 2002.  Approval and Promulgation of Implementation Plans; New Hampshire: Prevention of Significant Deterioration, 76 Fed. Reg. 34,630, 34,632 (June 14, 2011).

The court accordingly cannot agree with PSNH's position that, at the time of the turbine projects, it was subject to the NSR permitting regime introduced by the EPA's 2002 amendments. As they existed at the time of those projects, the applicable New Hampshire rules incorporated the federal regulatory scheme as it existed prior to the 2002 amendments.

In its reply memorandum, PSNH attempts to hedge its bet, arguing that CLF has failed to state a claim even under the pre-2002 version of the NSR permitting regime.  At oral argument, PSNH also sought to convince the court of this position.  This court, however, does not ordinarily address arguments advanced for the first time in reply.  See Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 303 n.16 (D.N.H. 2008).  It will not deviate from that practice in this case--particularly because PSNH has not directed the court to the relevant regulatory text in its memoranda, instead preferring to rely upon secondary sources for the broad propositions it advances.  The court is not inclined "to do counsel's work, create the ossature for the argument, and put flesh on its bones," especially where, as here,

16

counsel otherwise briefed and argued its case so ably, albeit unsuccessfully.[7] Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013).  PSNH's motion to dismiss is denied.

### B.   *CLF's motion to amend*

CLF seeks leave of court to amend the complaint to make additional allegations in Counts 1 and 3, and to add a claim-- proposed Count 8--alleging that PSNH has failed to comply with the "New Source Performance Standards" ("NSPS") established by 42 U.S.C. § 7411.  Because the time within which CLF could amend its complaint as a matter of right has elapsed, see Fed. R. Civ. P.

---

[7]Similarly, the court does not address PSNH's undeveloped arguments--advanced in footnotes to its opening memorandum--that this case should be dismissed for reasons of ripeness, comity, abstention, or res judicata.  See Memo. in Supp. of Mot. to Dismiss (document no. 15-1) at 12-13 n.9, 16 n.12.  PSNH remains free to renew those arguments in a different procedural posture.

The same is true of PSNH's argument that the "additional modifications" referred to in paragraphs 50-52 and 67 of the complaint "have nothing to do with the turbine replacement" and are simply "routine maintenance tasks" that "cannot be aggregated for purposes of NSR applicability."  Memo. in Supp. of Mot. to Dismiss (document no. 15-1) at 4, 18; see also Reply (document no. 27) at 10.  While that may well be true, at the pleading stage, this court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor."  Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012).  CLF has sufficiently alleged that the "additional modifications" were associated with, and took place at the same time as, the turbine projects.  Any argument to the contrary must be presented to the court by way of a motion for summary judgment (or equivalent procedural mechanism).

15(a)(1), but the court has not yet entered a scheduling order, CLF's motion is subject to the standard set forth in Rule 15(a)(2) of the Federal Rules of Civil Procedure.  See, e.g., Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013).  That rule directs the court to "freely give leave" to amend the complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

This standard is a relaxed one, but leave to amend may be denied in circumstances involving "undue delay, bad faith, futility, or the absence of due diligence on the movant's part." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  PSNH invokes the first and third grounds, arguing that CLF unduly delayed bringing its new claim, and that the proposed amendment would be futile in any event because the notice of intent to sue that CLF sent it prior to seeking leave to amend is deficient. Neither argument prevails.

PSNH's argument that CLF unreasonably delayed filing its NSPS claim requires little discussion.  PSNH is correct that the courts of this circuit typically disfavor amendments to the complaint that come well after the case has been filed.  See, e.g., id. at 30-31; Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  It is also true that CLF did not notify PSNH or the court of its desire to amend the complaint until this case

18

had been pending for over 18 months.  That, however, is not
grounds for denying leave to amend.  The principal reason for
courts' reluctance to entertain late amendments is, as the Court
of Appeals has explained, that "protracted delay" entails
"burdens on the opponent and the court," and can "requir[e] a re-
opening of discovery with additional costs, a significant
postponement of the trial, and a likely major alteration in trial
tactics and strategy," among other things.  Steir, 383 F.3d at
12.  That is not the case here.  As a result of PSNH's Rule 12
motion practice (some of which successfully resulted in the
dismissal of nearly half the claims in the case), discovery has
not commenced, no trial has been scheduled, and PSNH has not yet
even filed an answer to the complaint.  Under these
circumstances, permitting CLF to amend its complaint would hardly
be burdensome to either PSNH or the court.  And, in light of the
negligible burden that would result from the amendment, the fact
that CLF could have brought its new claim in an earlier
proceeding, or earlier in this proceeding--both matters that PSNH
focuses on in its memorandum in opposition to the motion to
amend--carries little weight in the analysis.

     PSNH's argument that Count 8 would be futile because CLF's
notice of intent to sue was deficient also fails.  The CAA
provides that "[n]o action may be commenced" under its citizen

suit provision unless the plaintiff who would seek to file such a suit has given 60 days' advance notice of the violation to the EPA, the state in which the alleged violation is occurring, and the alleged violator.  42 U.S.C. § 7604(b)(1)(A).  Our Court of Appeals has previously held that such notice provisions are not "technical wrinkle[s] or superfluous formalit[ies] that federal courts may waive at will," Garcia v. Cecos Int'l, Inc., 761 F.2d 76, 79 (1st Cir. 1985), but "mandatory conditions precedent to the filing of a citizen suit," Paolino v. JF Realty, LLC, 710 F.3d 31, 36 n.4 (1st Cir. 2013).  It has also advised that such requirements are to be applied "strictly."  Water Keeper Alliance v. U.S. Dep't of Def., 271 F.3d 21, 29 (1st Cir. 2001); see also Hallstrom v. Tillamook Cnty., 493 U.S. 20, 31 (1989) (demanding "strict adherence" to pre-suit notice provisions).  Nonetheless, even when the notice requirement is strictly applied, the record reveals that CLF's notice letter to the EPA, New Hampshire, and PSNH was sufficient to satisfy it.

Pursuant to EPA regulations, a pre-suit notice under § 7604(b)(1)(A)

> shall include sufficient information to permit the
> recipient to identify the specific standard,
> limitation, or order which has allegedly been violated,
> the activity alleged to be in violation, the person or
> persons responsible for the alleged violation, the
> location of the alleged violation, the date or dates of
> such violation, and the full name and address of the
> person giving the notice.

40 C.F.R. § 54.3(b).  CLF's notice letter, which it sent to the required recipients earlier this year, checks all these boxes:

• It identifies "the specific standard [or] limitation" violated as well as "the activity alleged to be in violation."  The letter asserts (as did CLF's original pre-suit notice letter, filed several years ago) that PSNH did not obtain certain permits--identified by reference to the relevant regulatory sections--before undertaking the 2008 and 2009 turbine projects.  It further asserts that during those projects, PSNH made changes to its coal-fired boiler and associated equipment that increased MK2's maximum hourly emissions of particulate matter, $NO_x$, and $SO_2$ to a level above the maximum hourly emissions achievable during the previous five years, thus triggering the NSPS.  It alleges that, after the projects, emissions from MK2 "repeatedly and/or continuously exceeded the NSPS emission rate limits for [particulate matter], $NO_x$, and $SO_2$, and the NSPS opacity standards for [particulate matter] emissions," again citing the relevant regulatory sections.

• It identifies PSNH as "the person or persons responsible for the alleged violation."

• It identifies the "Merrimack Station facility located at 97 River Road in Bow, New Hampshire" as "the location of the alleged violation."

• It identifies "the date or dates of [the] violation" as "between 2008 and the present."

• The letter is signed by and provides "the full name and address of the person giving the notice," CLF's counsel in this suit.

See Letter from Christophe G. Courchesne et al., Conservation Law Foundation, to Gary A. Long et al., Public Service Company of New Hampshire (March 28, 2013) (document no. 56-1).

PSNH does not seriously contest that all this information was contained in CLF's letter.  It instead decries "CLF's failure

21

to include any data or analysis," such as the preliminary expert
report CLF has provided the court along with its motion to amend,
in its notice letter.  This, PSNH protests, "den[ied] PSNH and
DES the opportunity to review [that data] and take appropriate
action."  PSNH has not, however, identified any statutory or
regulatory provision that required CLF to provide any and all
data or analyses in its possession along with its notice.  Cf.
Paolino, 710 F.3d at 38 (Clean Water Act's similar notice
provision does not require a plaintiff to "list every specific
aspect or detail of every alleged violation, or describe every
ramification of a violation" (citation and internal quotation
marks omitted)).  It instead cites a case in which a federal
district court in another circuit concluded that a prospective
citizen suit plaintiff under the Clean Water Act had "the duty to
provide as much information as possible" in his pre-suit notice,
reasoning that "[a]llowing a plaintiff to provide minimal
information in a notice letter before bringing suit would place a
heavy burden on alleged violators and enforcement agencies alike,
a burden inconsistent with the policy goals of the notice
requirement . . . ." Atwell v. KW Plastics Recycling Div., 173
F. Supp. 2d 1213, 1221-22 (M.D. Ala. 2001).

      That reasoning may also be consistent with the policy goals
underlying the CAA's notice requirement.  But "this court is not

free to disregard" plain statutory or regulatory language "in
favor of what courts in other jurisdictions have identified as
its underlying legislative intent." West v. Bell Helicopter
Textron, Inc., — F. Supp. 2d —, 2013 WL 4805802, at *19 (D.N.H.
Sept. 9, 2013) (citing United States v. Jimenez, 507 F.3d 13, 20
(1st Cir. 2007)).  As just noted, PSNH has identified (and this
court has found) no statute or regulation that imposes any "duty
to provide as much information as possible" with a pre-suit
notice under the CAA, so long as the requirements of 42 U.S.C.
§ 7604(b)(1)(A) and 40 C.F.R. § 54.3(b) are otherwise met.  In
fact, the regulation's language suggests a contrary conclusion,
requiring only that the prospective plaintiff "include sufficient
information"–-not "all information available"--about the alleged
violation.  40 C.F.R. § 54.3(b) (emphasis added).

CLF's pre-suit notice contained information sufficient to
"identif[y] the potential plaintiffs, provide[] basic contact
information, and allow[ PSNH] to identify and remedy the alleged
violations." Paolino, 710 F.3d at 34.  It therefore satisfied
the requirements of 40 C.F.R. § 54.3(b) and the CAA.  PSNH has
also argued–-both in its memorandum and quite passionately at
oral argument--that the proposed amendment would be futile
because the claims and allegations CLF seeks to add do not state
a plausible claim to relief.  In advancing this argument,

23

however, PSNH again confuses CLF's duty to allege facts sufficient to "state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678, with CLF's ability to ultimately prove the facts alleged with emissions data and expert testimony. Again, such a challenge--to CLF's evidence, rather than its allegations--is best presented to the court by way of a motion for summary judgment or its equivalent.  See n.7, supra.  CLF's motion to amend is accordingly granted.

### IV.   Conclusion

For the reasons set forth above, PSNH's motion to dismiss for failure to state a claim[8] is DENIED, and CLF's motion to amend the complaint[9] is GRANTED.  Within 48 hours counsel for CLF shall electronically refile the pleading attached to the Motion to Amend using the appropriate event in CMECF.

The court notes that the proposed amended complaint includes Counts 5-7, which were previously dismissed.  See n.1, supra.  By granting CLF leave to amend the complaint, the court does not intend to revive those counts.  The parties shall conduct their litigation accordingly.

---

[8]Document no. 15.

[9]Document no. 56.

24

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  December 17, 2013

cc:  Caitlin Peale, Esq.
     Christophe G. Courchesne, Esq.
     N. Jonathan Peress, Esq.
     Michael D. Freeman, Esq.
     Spencer M. Taylor, Esq.
     Barry Needleman, Esq.
     Jarrett B. Duncan, Esq.
     Linda T. Landis, Esq.
     Wilbur A. Glahn, III, Esq.
     Thomas A. Benson, Esq.
     Elias L. Quinn, Esq.
     George P. Sibley, Esq.
     Makram B. Jaber, Esq.
     Stephen H. Roberts. Esq.